May K. Leslie v. Commissioner.
May K. Leslie v. Commissioner
Docket No. 2950.
United States Tax Court
1945 Tax Ct. Memo LEXIS 295; 4 T.C.M. (CCH) 216; T.C.M. (RIA) 45063; February 12, 1945
*295 Warren Leslie, Jr., Esq., and Louis D. Blum, C.P.A., 110 E. 42nd St., New York 17, N.Y., for the petitioner. J. Richard Riggles, Jr., Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined a deficiency in gift tax for the year 1940 in the amount of $2,980.82. Petitioner contends that there is no deficiency, and that she has overpaid the gift tax. The gift tax return was filed with the collector for the third district of New York. Findings of Fact Petitioner resided in New York City in 1940 and in prior years. Her husband is Warren Leslie. She has six children. In 1932 and 1933, petitioner obtained insurance on the life of her husband, Warren Leslie, from various companies, under 7 policies in the total face amount of $325,000. Petitioner paio the premiums on all of the polcies, and she was the beneficiary under each policy. All of the incidents of ownership of the policies were in petitioner prior to August 24, 1940, when she assigned all of her interest in six of the policies to her six children. She assigned her interest in one policy to them on August 27, 1940. After the assignments of all of the *296 policies the children were the beneficiaries named in the policies in place of petitioner. Prior to April 21, 1939, Warren Leslie was indebted to three banks to whom he had given notes in the total amount of $2,223,730.87. On April 21, 1939 there were sold 60,000 shares of Jamaica Water Supply Company, owned by Warren Leslie, and held as collateral by two banks to secure his notes. The stock was sold for $1,800,000. The proceeds were used to pay in full the indebtedness to two banks, and to reduce the indebtedness to one bank, the Empire Trust Company. After adjustments for interest and other charges the balance owing to Empire Trust Company was $498,050.54. Warren Leslie gave his note to Empire for that amount on April 21, 1939. The note was due in 5 years, on April 21, 1944, with interest at one percent. Originally, the major part of the total indebtedness of Leslie was to Empire, and Empire held most of the above 60,000 shares of Jamaica Water Supply stock. Empire released that collateral upon the condition that other collateral should be substituted to secure the unpaid balance of Leslie's debt to Empire. Leslie pledged certain securities which he owned, 31,623 7/9th shares *297 of stock in Jamaica Water Supply Company owned by petitioner and the children, and the seven insurance policies on his life. Petitioner authorized her husband to hypothecate the policies. On April 28, 1939, they were assigned to Empire by petitioner, and petitioner, her husband, and Empire entered into an agreement which contained, inter alia, the following provisions: (Assignee refers to Empire; Assignor refers to May K. Leslie; Insured refers to Warren Leslie) 1. "Said assignments shall secure the repayment of a loan of $498,050.54 made by the Assignee to the Insured, and all direct or indirect liabilities of the Insured, to the Assignee, due or to become due, or that may hereafter be contracted, together with interest thereon and any proper charges and disbursements in connection therewith, all of which indebtedness, liabilities, interest, charges and disbursements are hereinafter referred to as the indebtedness. 2. "Any balance that may remain with the Assignee, of any sum or sums received by the Assignee under or upon said policies, after payment and satisfaction of the Indebtedness, shall be paid by the Assignee to those entitled to receive the same from said insurance company *298 under the provisions of said policies as in force at the time of said assignments, unless said provisions shall be duly changed with the written consent of the Assignee. 3. "The Assignee may at any time or times, and without consent of or notice to the Insured or any Beneficiary, do any or all of the following without in any way impairing any of the rights of the Assignee in or to said policies, or impairing or releasing the effect of said assignments on any interest any Beneficiary has or may have in said policies; release any party primarily or secondarily liable for any or all of the Indebtedness; release part or all of any other collateral at any time held by the Assignee as security or part security for any or all of the Indebtedness; extend the time for payment of any or all of the Indebtedness; increase or decrease the rate of interest payable upon any or all of the Indebtedness; increase the amount of the Indebtedness; and otherwise change any or all of the terms, provisions, and conditions of any or all of the Indebtedness, by agreement with the Insured. 4. "Neither the Insured nor any Beneficiary shall by reason of the application to any or all of the Indebtedness of *299 any of the proceeds of or payments obtained under said policies be entitled to subrogation to any rights or claims of the Assignee in or to any other collateral at any time held for any or all of the Indebtedness, or have any right of contribution or reimbursement from any one owning or having any interest in such other collateral. * * * * *
8. "As between the Assignee and said insurance companies the Assignee shall be the absolute owner of said policies and said insurance companies shall be fully discharged to the extent of any release given to it by the Assignee." On April 28, 1939, the other collateral pledged to secure Leslie's note consisted of 400 shares of General Electric Company common stock, 50 shares of General Motors Company common stock; 66 4/6 shares of Radio Corporation common stock; and $8,200 face amount, 3% City of New York bonds. On August 24, 1940, the total fair market value of these securities was $23,725.62. Also 31,623 7/9 shares of Jamaica Water Supply Company common stock was pledged, and it had a fair market value of $1,012,152.88 on August 24, 1940. On August 24, 1940 the cash surrender value of the seven policies of life insurance was $82,655.72. *300 The total value on August 24, 1940 of all of the collateral pledged to secure the debt to Empire was $1,118,534.22, and on that date the debt had been reduced to $484,813.88. There was no agreement between petitioner, her husband, and Empire as to the order in which the collateral was to be applied to the debt in the event of default of Leslie to pay his note and the interest. Warren Leslie is president of Jamaica Water Supply Company, and he receives an annual salary of $25,000. He was 69 years old in 1940. In August of 1940 his assets were not sufficient to cover his debt to Empire. His liabilities exceeded his assets. In August 1940, Empire had a prior claim against the policies of insurance and the proceeds thereof to the extent of the balance then owing on Leslie's note. Empire's lien exceeded the face value of the policies. In August 1940, the value of petitioner's "equity" or interest in the insurance policies did not exceed $46,829.69. Opinion The question presented by the pleadings is the value of petitioner's interest in the pledged insurance policies in August of 1940 when she caused the beneficiary of each policy to be changed to her children. See Section 1005 of the Internal Revenue Code *301 . Petitioner has alleged in her petition: (1) that respondent erred in determining the value of her interest in the policies to be $82,655.72; and, (2) that the value was $46,829.69. Petitioner's argument is that the lien of the pledgee upon the policies and the proceeds thereof reduced the value of her interest in the policies below $82,655.72, the cash value in August of 1940. Petitioner contends that the value should be determined to be $46,829.69 under Section 1005. Thus, the question presented by the pleadings is limited to determining the value of petitioner's interest in the policies to be one of two amounts. Our considerations are thus limited by the pleadings. The facts which are determinative of petitioner's first contention that the value of her interest was not $82,655.72 are as follows: Under the pledge agreement of April 28, 1939, the policies were pledged to secure the repayment of the entire amount of Leslie's note, to wit, $498,050.54, plus interest and charges, despite the fact that there had been pledged other collateral to secure repayment of the indebtedness. Under the pledge agreement neither the insured nor any beneficiary had any right of contribution or reimbursement *302 from anyone owning or having any interest in any of the other collateral by reason of the application of any of the proceeds of the insurance to the repayment of all or part of the indebtedness. The only conclusion to be drawn from the terms of the agreement is that the pledgee, Empire, had a lien on the maximum amount which could be realized from the policies. In August of 1940 the balance due on Leslie's note was $484,814, which exceeded the total face value of all of the policies, $325,000. The right of Empire as a pledgee of the policies was to apply the proceeds of the policies to the repayment of the entire amount of the debt. In August of 1940, Leslie's liabilities greatly exceeded his assets, and the contingency that Empire might exercise its right as a pledgee against the insurance policies upon failure of Leslie to pay his note in full was a very real contingency. Empire's rights in the policies were superior to petitioner's rights. See Chamberlin v. First Trust & Deposit Co., 15 N.Y.S. (2d) 168, 170. We have held that the term "value" as used in Section 1005 means fair market value. John J. Newberry, 39 B.T.A. 1123; Augustus E. Staley, 41 B.T.A. 752, 769. *303 Fair market value has been defined to mean the price which would probably be agreed upon by a seller and a buyer, each being willing, and under no compulsion, and having a reasonable knowledge of the facts. John J. Newberry, supra.Under the determinative facts, set forth above, a willing buyer having a reasonable knowledge of the facts would not have paid the entire cash value of the pledged policies, namely, $82,655.72, for the interest of petitioner in view of Empire's prior lien to secure repayment of $484,814. Petitioner's first contention that respondent erred in his adoption of the above amount as the value of her interest is sustained. With respect to petitioner's second contention that the value of the interest for purposes of gift tax was $46,829.69, it is concluded that the value of the interest did not exceed said amount, and that has been found as a fact. Petitioner undertook to establish a value by a method of her own creation for which no authority is cited. Since the question of value is a question of fact, and the facts do not support a value in excess of the amount claimed by petitioner, it is unnecessary to go further than to sustain the second contention *304 of petitioner. Accordingly, it is held that the value of petitioner's interest in the policies in August of 1940 did not exceed $46,829.69. Decision will be entered under Rule 50.